# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. William J. Martini, |
| | : | U.S. District Judge |
| v. | : | |
| | : | |
| SHARPE JAMES and | : | Criminal No. 07-578 (WJM) |
| TAMIKA RILEY | : | |

---

## GOVERNMENT'S MEMORANDUM OF LAW
## ON ANTICIPATED TRIAL ISSUES

---

CHRISTOPHER J. CHRISTIE
United States Attorney
970 Broad Street
Newark, New Jersey  07102
(973) 645-2700

On the Memorandum:
JUDITH H. GERMANO
PHILLIP H. KWON
Assistant United States Attorneys
PERRY PRIMAVERA
Special Assistant United States Attorney

# TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     Defendants Should Be Precluded from Asserting
Claims of Selective and Vindictive Prosecution or
Outrageous Government Conduct Before the Jury . . . . . . . . . . . . . . . . . . . . . . . 2

II.    The Court Should Preclude Defendants from
Arguing Jury Nullification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.   Admissibility of Search Items and Other
Evidentiary Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.    Authenticity of the Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.    Trustworthiness and Proper Purposes . . . . . . . . . . . . . . . . . . . . . . . . . . 11

               (i)     Non-Hearsay -- Admissions of Defendant . . . . . . . . . . . . . . . . . 11
               (ii)    Non-Hearsay -- Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               (iii)   Non-Hearsay -- False Statements . . . . . . . . . . . . . . . . . . . . . . . 14
               (iv)   Non-Hearsay -- Admissions by Employee/Agent . . . . . . . . . . . 15
               (v)    Hearsay Exception – Coconspirator Statements . . . . . . . . . . . . 17
               (vi)   Hearsay Exception -- Business Records . . . . . . . . . . . . . . . . . . 18
               (vii)  Hearsay Exception -- Public Records . . . . . . . . . . . . . . . . . . . . 19

IV.   Summary and Demonstrative Charts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.     Jencks Production Applies to Subject Matter of Testimony Only . . . . . . . . . . . 22

VI.   Prior Consistent Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VII.  Hostile or Adverse Witnesses and Leading Questions . . . . . . . . . . . . . . . . . . . 26

VIII. Use of Hypothetical Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

IX.   Use of Prior Testimony as Substantive Evidence . . . . . . . . . . . . . . . . . . . . . . . 28

i

X.     The Court Should Properly Limit the Defendants'
Introduction of Character or Reputation Evidence . . . . . . . . . . . . . . . . . . . . . . . . 32

     A.    Direct Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

     B.    Cross-Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

          (i)     Reputation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
          (ii)    Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XI.    Good-Faith Basis for Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## **PRELIMINARY STATEMENT**

The United States respectfully submits this memorandum to address certain procedural and evidentiary issues that may arise during the trial.  An overview of the pending charges is set forth in the Indictment, the Government's Case Overview Statement submitted for Voir Dire, and in the Government's Opposition to Defendants' Pretrial Motions submitted on November 19, 2007.  The United States requests leave to supplement this memorandum if other issues arise during the trial.

I.      **DEFENDANTS SHOULD BE PRECLUDED FROM ASSERTING CLAIMS OF SELECTIVE AND VINDICTIVE PROSECUTION OR OUTRAGEOUS GOVERNMENT CONDUCT BEFORE THE JURY**

The United States moves in limine to preclude defendants Sharpe James and Tamika Riley from suggesting, either through questions or argument before the jury, any claim that the Government had a selective or vindictive motive for prosecuting this matter.  The United States further requests that the Court preclude defendants from attacking the Government's conduct in any manner that does not bear on guilty or innocence.  Claims of outrageous Government conduct and claims of vindictive or selective prosecution are issues solely for the Court, and it is improper to raise these issues before the jury.  In light of defense counsel's comments at pretrial hearings in this case -- notwithstanding the Court's admonishment to defense counsel regarding the impropriety of such claims -- it is anticipated that the defendants may seek to improperly raise these issues before the jury, in opening arguments and throughout the case.

The Court should preclude defendants from submitting theories about selective or vindictive prosecutorial motive to the jury, either through evidence or through argument.  Any attempt to ascribe motives to the prosecution before the jury is foreclosed by United States v. Berrigan, 482 F.2d 171 (3d Cir. 1973).  In that case, Father Philip Berrigan and others were successfully prosecuted for smuggling letters into and out of a federal prison without the warden's consent.  The letters concerned a conspiracy to kidnap Henry Kissinger and otherwise disrupt the functioning of the federal government and the Selective Service System.  At their trial, the defendants argued that "the prosecution . . . was conducted for political reasons, because of defendants' efforts to end the use of United States military forces in Southeast Asia and for personal reasons to vindicate the reputation of" the former F.B.I. Director, J. Edgar

2

Hoover.  Id. at 173.  When the defendants "sought to introduce evidence of discriminatory prosecution to the jury," the trial court held that "discriminatory prosecution is not a defense to be presented before a jury but is a matter that could have been raised at pretrial on a motion . . . ."  Id. at 174.

The Third Circuit affirmed, concluding that the district court properly barred the defendants from introducing evidence of discriminatory prosecution to the jury.  Berrigan, 482 F.2d at 175–76.  The Third Court held that "[t]he question of discriminatory prosecution relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution."  Id. at 175.  The well established Berrigan rule has been reinforced for decades.  See, e.g., United States v. Dufresne, 58 Fed. Appx. 890, 895 (3d Cir. 2003) (citing Berrigan); United States v. Bertoli, 845 F. Supp. 975, 1163 (D.N.J.), aff'd in part, vacated in part on other grounds, 40 F.3d 1384 (3d Cir. 1994) ("[Q]uestions relating to selective or vindictive prosecution and prosecutorial misconduct are properly addressed to the trial judge, and not to the jury.") (citing Berrigan); United States v. Abboud, 438 F.3d 554, 579–80 (6th Cir.), cert. denied, 127 S. Ct. 446 (2006) (citing Berrigan); United States v. Napper, 553 F. Supp. 231, 232 (E.D.N.Y. 1982) ("The defendant does not have the right to present a selective prosecution claim to a jury . . . .  A selective prosecution claim is . . . a question of law properly determined only by the Court . . . .").  These authorities, and Berrigan in particular, preclude any attempt by the defense to comment on any alleged motive for this prosecution before the jury.  Under Berrigan, such charges simply are not for the jury to hear, much less decide.

The Supreme Court has distinguished between questions concerning the guilt or innocence of the defendant, which must be submitted to the jury, and "those preliminary matters

concerning the right of the court to conduct the trial," which are properly decided by the court. See, e.g., Ford v. United States, 273 U.S. 593, 606 (1927) (observing that "the issue whether the ship [carrying contraband liquor] was seized [improperly] did not affect the question of the defendant's guilt or innocence," and was therefore not a question for the jury).  See also United States v. Russell, 411 U.S. 423, 441 (1973) (Brennan, J., dissenting) ("[T]he determination of the lawfulness of the Government's conduct must be made—as it is on all questions involving the legality of law enforcement methods—by the trial judge, not the jury."); United States v. Engler, 806 F.2d 425, 430 (3d Cir. 1986) (due process claim alleging "outrageous government conduct" an issue for the judge, not the jury).

Moreover, according to the Federal Rules of Evidence, any evidence introduced by the defendants alleging selective or vindictive motive on the part of the Government in bringing this prosecution is irrelevant and therefore inadmissible.  Rule 402 states that "[e]vidence which is not relevant is not admissible."  Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Arguments and evidence submitted by the defense alleging a motive on the part of the Government have no bearing on the defendants' guilt or innocence or on any fact that is of consequence to the determination of this action.  Thus, such arguments and evidence, in addition to being unfairly prejudicial, are irrelevant and inadmissible under the Federal Rules of Evidence.

The Supreme Court and the Third Circuit have both instructed that district courts have the responsibility to prevent the defense arguments from ranging "out of bounds" to unfair and unsupported attacks on the prosecution's motives or tactics.  United States v. Young, 470 U.S. 1,

13 (1985); <u>United States v. Pungitore</u>, 910 F.2d 1084, 1127 (3d Cir. 1990).  The best way for this Court to exercise that responsibility is to grant this motion <u>in</u> <u>limine</u> at the outset of the trial. The Court should enter an order precluding defendants from tendering any defense to the jury that concerns any alleged prosecution motive in initiating and pursuing this case.  The prohibition should extend to every possible method of presenting a defense based on selective or vindictive motive: direct evidence, cross-examination, and argument in opening or summation.

## II.     **THE COURT SHOULD PRECLUDE DEFENDANTS FROM ARGUING JURY NULLIFICATION**

Similarly, the Court should preclude the defendants from raising a defense of jury nullification in any manner.  For instance, based on various statements of counsel it is anticipated that defendants may attempt to argue, among others, that:

- defendants did other good things for Newark and that somehow would condone, excuse or offset their criminal conduct;

- their conduct actually was good for the market;

- there was purported Government misconduct;

- they faced serious penalties;

- a conviction could affect the defendants' families, colleagues or former constituents.

Counsel may argue (directly or by implication) that in light of the above, the jury should find the defendants not guilty, even if they technically are guilty.  Any such arguments are attempts at jury nullification and are, therefore, totally inappropriate in federal court.

Federal courts have been vigilant in prohibiting the defense of jury nullification in any of its many forms.  See United States v. Bruce, 109 F.3d 323, 327 (7th Cir. 1997).  One court has stated:

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of a power to misapply the law.  Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

United States v. Washington, 705 F.2d 489, 494 (D.C. Cir. 1983).  See also United States v. Kemp, 500 F.3d 257, 304 (3d Cir. 2007) (holding district courts may discharge jurors, even during deliberations, for bias or jury nullification); United States v. Boone, 458 F.3d 321, 329 (3d Cir. 2006) (finding that a juror "who commits jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role").

The Second Circuit has instructed that jury nullification "is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent." United States v. Thomas, 116 F.3d 606, 615 (2d Cir. 1997).  Accordingly, the Second Circuit has set forth a clear instruction for trial judges when jury nullification issues present themselves:

> Inasmuch as no juror has a right to engage in nullification -- and, on the contrary, it is a violation of a juror's sworn duty to follow the law as instructed by the court -- trial courts have a duty to forestall or prevent such conduct, whether by firm instruction or admonition. . . .

Id. at 616 (emphasis added).  The United States requests that this Court prohibit any attempts at nullification in this case.

Because the jury enjoys no right to nullify criminal laws, the defendants have no consequent right to: (1) adduce evidence that tends to be probative of the irrelevant issue of nullification and which is not probative of any defense at law; (2) argue nullification to the jury;

6

or (3) have the Court give a pro-nullification instruction to the jury.  United States v. Funches,

135 F.3d 1405, 1409 (11th Cir. 1998).

Federal courts absolutely bar defense examination on nullification or its varied

component parts, such as:  (1) the potential penalties facing the defendant, see United States v.

Cropp, 127 F.3d 354, 358 (4th Cir. 1997); (2) the defendant's ignorance of the law, Funches, 135

F.3d at 1408-09; and (3) any evidence irrelevant for any purpose other than to provoke the finder

of fact to disregard the law, United States v. Lucero, 895 F. Supp. 1421, 1426 (D. Kan. 1995).

Courts also have barred defense arguments to the jury on nullification issues.  See United States

v. Manning, 79 F.3d 212, 219 (1st Cir. 1996); United States v. Calhoun, 49 F.3d 231, 236 n.6

(6th Cir. 1995); United States v. Tujillo, 714 F.2d 102, 105-06 (11th Cir. 1983) (citing other

appellate cases).

Many appellate courts also have held, or at least observed, that a criminal defendant is

not entitled to have the jury instructed that it can, despite finding the defendant guilty beyond a

reasonable doubt, disregard the law and acquit that defendant.  See, e.g., United States v. Rith,

164 F.3d 1323, 1338 (10th Cir. 1999); Thomas, 116 F.3d at 616 n.9; United States v. Edwards,

101 F.3d 17, 19 (2d Cir. 1996); United States v. Sepulveda, 15 F.3d 1161, 1189-90 (1st Cir.

1993); United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1991); United States v. Anderson,

716 F.2d 446, 450 (7th Cir. 1983); Washington, 705 F.2d at 492; Lucero, 895 F. Supp. at 1426

(citing appellate cases).  In fact, courts have permitted strong instructions in the opposite

direction -- instructions calculated to prevent juries from nullifying and to, instead, follow the

law.  See Bruce, 109 F.3d at 327 (approving this instruction: "[y]ou must not question any rule

of law stated by me in these instructions.  Regardless of any opinion you may have as to what the law ought to be, you must base your verdict on the law given by me.").

Courts are so concerned about their responsibilities regarding protecting against nullification, that they regularly have granted the Government's in limine motions at the trial's outset to prohibit defense attempts (1) to adduce evidence regarding, and (2) to argue, nullification.  For instance, in United States v. Andreas, 23 F. Supp. 2d 835 (N.D. Ill. 1998), a criminal antitrust price-fixing matter, the Government moved to preclude the defendants from adducing evidence and arguing:  (1) that their conduct actually was good for the market; (2) that there was Government misconduct; (3) about what serious penalties faced them; (4) about the affect a conviction would have on the defendants' families; and (5) defense counsel's prior experience as a prosecutor.  The district court explained:  "[a]s a matter of law, the defendants are prohibited from raising a jury nullification argument to the jury. . . .  Impassioned pleas expounding the defendants' virtues as employers and how potential convictions would affect their families are irrelevant in determining their guilt or innocence . . . ."  Id. at 852 (citation omitted).

Similarly, courts have granted Government motions to prevent the defense from arguing nullification to the jury.  In United States v. Trujillo, 714 F.2d 102, 105 (11th Cir. 1983), defense counsel sought to argue that, notwithstanding the law, the jury could acquit his client of narcotics trafficking because his client had cooperated with the Government for a time after his arrest.  The trial court barred him from doing so.  The Eleventh Circuit affirmed the trial court's ruling, explaining:

> [i]n arguing the law to the jury, counsel is confined to principles that will later be incorporated and charged to the jury. . . .  The jury in this case was properly

8

> instructed on their duty to follow the law as stated in the jury instruction.
> Appellant's jury nullification argument would have encouraged the jurors to
> ignore the court's instruction and apply the law at their caprice.

Id. at 106.  The Trujillo court therefore held that defense counsel could not argue jury

nullification during closing argument and that the trial court correctly ruled when it foreclosed

that possibility.

The United States asks that the Court order that the defense shall not adduce evidence in

any form regarding jury nullification or argue such a theory to the jury.

## III.   ADMISSIBILITY OF SEARCH ITEMS AND OTHER EVIDENTIARY ISSUES

The United States anticipates that it will offer in evidence materials seized from the

searches of defendant Riley's business, Tamika Riley, Inc. ("TRI"), and a storage facility rented

by defendant Sharpe James.  As explained below, these materials are authentic and also are

trustworthy and will be offered for proper purposes.

### A.   Authenticity of the Documents

The United States Court of Appeals for the Third Circuit summarized the standards for

authentication in United States v. McGlory, 968 F.2d 309, 328 (3d Cir. 1992):

> Under Federal Rule of Evidence 901 "[t]he requirement of authentication
> or identification as a condition precedent to admissibility is satisfied by
> evidence sufficient to support a finding that the matter in question is what
> its proponent claims."  Fed. R. Evid. 901(a).  For authentication or
> identification . . . the government could rely on "[c]omparison by the trier
> of fact or by the trier of fact or by expert witnesses with specimens which
> have been authenticated," Fed. R. Evid. 901(b)(3), or on "appearance,
> contents, substance, internal patterns, or other distinctive characteristics,
> taken in conjunction with the circumstances."  Fed. R. Evid. 901(b)(4);
> see Link v. Mercedes-Benz of North America, 788 F.2d 918, 927 (3d Cir.
> 1986).

We stated the standard for authentication based on circumstantial evidence in Link:

"[T]he showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility.  Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court[.]  The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.  Link, 788 F.2d at 928 (quoting United States v. Goichman, 547 F.2d 778, 784 (3d Cir. 1976)) (emphasis omitted)."

See also United States v. Scurlock, 52 F.3d 531, 538 (5th Cir. 1995) ("Conclusive proof of authenticity is not required."); United States v. Reilly, 33 F.3d 1396, 1404 (3d Cir. 1994) ("The burden of proof of authentication is slight."); United States v. Wilson, 532 F.2d 641, 645 (8th Cir. 1976) ("It is well settled that genuineness of a writing can be established by circumstantial proof without resort to the handwriting or typewriting.  Where the writings are such that only those persons acquainted with the particular transactions involved could have written them, the authenticity of the evidence is considered more reliable").  Therefore, handwriting analysis, handwriting comparison, location of a document, and the contents of the document itself all can be used, among other things, to authenticate a particular document.

McGlory, itself, is further instructive as to the relaxed proof requirement for authentication.  There, agents found many handwritten notes and jottings in the trash outside the defendant's residence.  Some notes were torn out of a notebook found inside one of the residences.  Some notes were contained in bags that held other identifying information.  Some notes were written on note paper from hotels where the defendant had stayed.  However, in many instances, the handwriting expert could not conclusively testify to the identity of the author of

10

the notes, although he did find numerous similarities to the defendant's writing.  968 F.2d at 329.

Observing that although the handwriting on the notes could not definitively be identified to the

defendant, the appellate court nevertheless found them authentic based on (1) the distinctive

characteristics in the notes basically linking them to the defendant's illegal business and (2) their

location among other of the defendant's materials.  Id. at 331.  See also United States v. Console,

13 F.3d 641, 661 (3d Cir. 1993) ("'A document or telephone conversation may be shown to have

emanated from a particular person by virtue of its disclosing knowledge of facts known

peculiarly to him.'" (quoting Fed. R. Evid. 901 advisory committee note ex (4)); United States v.

Enriquez-Estrada, 999 F.2d 1355, 1360 (9th Cir. 1993) (documents found at stash house and

whose writings reflected narcotics activity found authentic, without more).  From time to time,

the United States will introduce and authenticate evidence based on a similar rationale.

> **B.**     **Trustworthiness and Proper Purposes**

Notwithstanding authentication, the materials offered still must be trustworthy and

offered for a proper purpose.  In other words, the materials either must be nonhearsay or offered

under an exception to Rule 802 of the Federal Rules of Evidence precluding the admissibility of

hearsay.

> **(i)     Non-Hearsay - Admissions of Defendant**

In many instances, the Government will seek to introduce documents that appear to have

been written by the defendants as admissions of a party-opponent that are admissible under Fed.

R. Evid. 801(d)(2)(A) (an admission is a statement offered against a party that is the party's own

statement in either an individual or a representative capacity).  See also United States v.

Williams, 837 F.2d 1009, 1014 (11th Cir. 1988) (receipts initialed by defendant considered

admissions, even though testimony providing foundation was not received until after the court admitted the evidence); United States v. Moran, 759 F.2d 777, 786 (9th Cir. 1985) (letters and deposit slips that the defendant signed are admissions); United States v. Norris, 205 F.2d 828, 829 (2d Cir. 1953) (defendant's statements on a bank loan application, including statements regarding net worth, are admissible in evidence as admissions); South Central Bank & Trust Co. v. Citicorp Credit Services, Inc., 863 F. Supp. 635, 646 (N.D. Ill. 1994) (crossed out statements considered admissions -- "A crossed out sentence is not like an unexpressed thought; to the contrary, it is more like an expressed thought that someone thought to rescind or retract.[ ]  It is the written equivalent of a spoken statement followed by the words, 'forget I said that.'  A statement once made, is no less a statement simply because its maker has changed his or her mind.").

The Government need not offer direct evidence that the defendant authored the document in question, but may prove so by circumstantial evidence.  "'[T]he techniques [of identifying a writer by the internal patterns of the writing] -- without the aid of experts or computers -- is one long used in the courts."  United States v. Clifford, 704 F.2d 86, 90-91 (3d Cir. 1983) (citation omitted).

In Clifford, the Government sought to introduce correspondence authored in cursive penmanship apparently written by the defendant to show similarities between the letters and the threatening letters at issue.  The Government had circumstantial evidence that the defendant had written the letters because they bore the signature "Russell Clifford" and because they were addressed to officials with whom the defendant had regularly had business contacts.  In relevant part, the district court excluded the correspondence, holding that it was inadmissible because it

12

would lead to a jury verdict based on surprise and speculation.  Id.[1]  The Court of Appeals

reversed, finding that the similarities between the cursive correspondence and the threatening

letters "had some tendency to make the defendant's authorship of the threatening letters more

probable."  Id. at 90.  As the court held, "jurors can[ ] merely examine the documents for

themselves and consider the similarities between the documents along with the rest of the

evidence presented by the government."  Id.

      The United States may offer documents under this standard.

**(ii)**   **Non-Hearsay -- Generally**

      In many instances, the United States also will offer documents for a non-hearsay purpose;

that is, offering them for a purpose other than the truth of the matter asserted.  The cases below

are instances in which such admission of evidence was proper.

      For instance, the Third Circuit has accepted evidence of notes containing the name of a

co-conspirator found at the premises of another co-conspirator to demonstrate association and

relationship between them.  McGlory, 968 F.2d at 333 (citations omitted).  See also United

States v. Wicks, 995 F.2d 964, 974 (10th Cir. 1993) (admission of documents containing

narcotics formulas found in defendant's hotel room admissible to demonstrate defendant's

involvement in drug-trafficking); United States v. Mejias, 552 F.2d 435, 436 (2d Cir. 1977)

(hotel receipt, luggage invoice and business card linking defendant to another witness seized

from the defendant properly offered to show defendant's (1) connection to the hotel and luggage

found in the hotel and (2) relationship to the witness).  Another Third Circuit panel has held that

---

     [1]  The district court also denied the Government's motion to compel the defendant's
handwriting exemplars.

13

the receipt of telegrams containing instructions was relevant to show a defendant's knowledge and state of mind.  United States v. Reilly, 33 F.3d 1396, 1410 (3rd. Cir. 1994).  Similarly, the Sixth Circuit has ruled that letters sent to a defendant are admissible to demonstrate notice to the defendant.  United States v. Jefferson, 650 F.2d 854, 858 (6th Cir. 1981).  See also United States v. Hawkins, 905 F.2d 1489, 1495 (11th Cir. 1990).  The United States contemplates offering exhibits for these, and similar, reasons.

### (iii)  Non-Hearsay -- False Statements

The United States may seek to offer certain false statements from time to time, for the fact that they were made.  Such statements are not hearsay.

False statements are not hearsay.  As the United States Supreme Court explained in Anderson v. United States:

> Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted.[ ]. . . [When statements are offered] simply to prove that the statements were made [ ] so as to establish a foundation for later showing, through other admissible evidence, that they were false

the hearsay rule is inapplicable.  417 U.S. 211, 220 (1974).  Cf.  United States v. Hathaway, 798 F.2d 902, 905 (6th Cir. 1986).

> When statements are offered to prove the falsity of the matter asserted, there is no need to assess the credibility of the declarant.  Since there is no need to assess the credibility of the declarant of a false statement, we know of no purpose which would be served by extending the definition of hearsay to cover statements offered for the falsity of the matter asserted.

United States v. Wellington, 754 F.2d 1457, 1464 (9th Cir. 1985) (false "representations are not hearsay because their probative value is independent of their truth"); United States v. Moore, 748 F.2d 246, 248 (5th Cir. 1984) ("Statements which are introduced solely for the purpose of

14

proving that the were made as a predicate for later proof that they were false are not hearsay."). "The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence." Anderson, 417 U.S. at 220.  In a false-statement context, since the prosecution does not contend that what the declarant said was true, no defendant has an interest in cross-examining the declarant to put the declarant's credibility in issue.  Id.  Such statements therefore are admissible if relevant in some way--for instance, (1) to prove that the charged conspiracy existed, Anderson, 417 U.S. at 221; United States v. Hackett, 638 F.2d 1179, 1186 (9th Cir. 1980), and/or (2) to demonstrate the declarant's consciousness of guilt, see Hackett, 638 F.2d at 1186-87.  Such statements therefore would be relevant and admissible against the defendant here.  Hackett, 638 F.2d at 1187.

### (iv)     Non-Hearsay--Admissions by Employee/Agent

The United States may offer statements of agents and employees of defendant Sharpe James and Tamika Riley concerning matters within the scope of their agency/employment, made during the existence of the agency/employment relationship.  The Federal Rules of Evidence provide that such statements are admissions of the defendant under certain circumstances. Fed. R. Evid. 801(d)(2)(D).  The Federal Rules of Evidence do not define "agent."  The term carries its traditional meaning as defined by the federal common law principles of agency.  See United States v. Wiedyk, 71 F.3d 602, 605 (6th Cir. 1995); Lippay v. Christos, 996 F.2d 1490, 1497 (3d Cir. 1993).  The Government, as the proponent of the evidence, has the burden to demonstrate that the declarant made the statement within the scope of an agency or employment relationship with the defendant.  Lippay, 996 F.2d at 1497.  This is a question of preliminary admissibility

under Fed. R. Evid. 104(a), which the Government can demonstrate to the Court by a preponderance of the evidence.  See Riley v. K Mart Corp., 864 F.2d 1049, 1055-56 n.8 (3d Cir. 1988).  The Government can demonstrate this employment or agency relationship by showing that the defendant, against whom the statement is being offered, directed the declarant's work. Lippay, 996 F.2d at 1497.  Specific authorization to make the statement need not be shown -- that the statement was made within the scope of agency is sufficient.  United States v. Portsmouth Paving Corp., 694 F.2d 312, 321 (4th Cir. 1982).

 For example, in Portsmouth Paving Corp., the proponent of the evidence sought to admit the statement of a party made to the witness through that party's secretary during a telephone conversation with the witness, as part of a chain of hearsay within hearsay.  The Fourth Circuit explained, with respect to the admissibility of the secretary's restatement of her boss's statement to the witness: "[t]hat a businessman's secretary is an agent of the business for the purposes of relaying messages to and from the businessman is common knowledge."  694 F.2d at 322.  Since the secretary relayed her boss's statement, the appellate court ruled that this clearly was a matter within the scope of her employment because part of her job entailed relaying messages from her boss to business callers.  Such statement thus was non-hearsay and admissible subject to Rule 801(d)(2)(D).  Id.  See also United States v. Mandel, 591 F.2d 1347, 1367-68 (4th Cir. 1979) (statements of corrupt public official's aides concerning official's views on legislation underlying the corrupt payment admissible under agent-admission rule).  The United States may seek to admit similar evidence under this theory.

(**v**)     **Hearsay Exception – Coconspirator Statements**

The United States also may offer certain materials under Rule 801(d)(2)(E) of the Federal Rules of Evidence, which provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not inadmissible hearsay as to that party.  Before the Court admits such statements, the Government must demonstrate that:

(1)     a conspiracy existed;

(2)     the declarant and the party against whom the statement is offered were members of the conspiracy;

(3)     the statement was made in the course of the conspiracy; and

(4)     the statement was made in furtherance of the conspiracy.

McGlory, 968 F.2d at 333.  The Court must find that these factors exist not beyond a reasonable doubt, but by a mere preponderance of the evidence.  Id. (citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)).  The Court may use the hearsay statements themselves in reaching this determination.  Bourjaily, 483 U.S. at 178-79 (individual pieces of evidence, insufficient in themselves to prove a point, may be added together to reach the determination that the statements in question are admissible under the coconspirator exception).  A particular conspiracy need not be charged for the exception to be triggered.  United States v. Ellis, 156 F.3d 493, 497 (3d Cir. 1997); United States v. Trowery, 542 F.2d 623, 626 (3d Cir. 1976).  A declarant need not be identified to make the statement admissible under the exception.  McGlory, 968 F.2d at 335.  Handwritten notes and jottings can be declarations of a coconspirator.  Id. at 333-38; United States v. Cerone, 830 F.2d 938, 949 (8th Cir. 1987).  The United States may offer certain exhibits under this standard, as well.

(**vi**)     **Hearsay Exception -- Business Records**

17

The United States also will seek to admit certain documents and records under the business-record exception to the hearsay rule.  This exception authorizes the admission of

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).  The foundation requirements to which a witness must attest are that:

(1)     the declarant in the records had knowledge to make accurate statements;

(2)     the declarant recorded statements contemporaneously with the actions which were the subject of the reports;

(3)     the declarant made the record in the regular course of the business activity; and

(4)     such records were regularly kept by the business.

Console, 13 F.3d at 657.  Rule 803(6) does not require that the person who transmitted the recorded information be under a business duty to accurately record the information.  Id. (citing United States v. Patrick, 959 F.2d 991, 1001 (D.C. Cir. 1992)).  It is sufficient if the Government demonstrates that the standard practice was to verify the information provided, or that the information transmitted meets the requirements of another hearsay exception.  Console, 13 F.3d at 657-58.  "Nonroutine records made in the course of a regularly conducted 'business' should be admissible if they meet the other requirements of Rule 803(6) unless 'the sources of information or other circumstances indicate lack of trustworthiness.'"  United States v. Jacoby, 955 F.2d 1527, 1537 (11th Cir. 1992).  The Government may establish the foundation under Fed. R. Evid.

18

803(6) by circumstantial, or a combination of direct and circumstantial, evidence.  United States

v. Kail, 804 F.2d 441, 448-49 (8th Cir. 1986).

Under these rules, courts have found a variety of business records to be admissible,

including (1) calendars and daytimers, United States v. McPartlin, 595 F.2d 1321, 1347-48 (7th

Cir. 1979); United States v. Evans, 572 F.2d 455, 487 (5th Cir. 1978); (2) commission ledgers,

Kail, 804 F.2d at 448-49; (3) interoffice memoranda or file memoranda, including those

explaining unusual or atypical circumstances, Jacoby, 955 F.2d at 1537-38; United States v.

Keplinger, 776 F.2d 678, 693 (7th Cir. 1985); (4) logbooks, F.A.A. v. Landy, 705 F.2d 624, 633

(2d Cir. 1983); Gulf South Machine, Inc. v. Kearney & Trecker Corp., 756 F.2d 377, 381 (5th

Cir. 1985); (5) meeting notes, Hoselton v. Metz Baking Company, 48 F.3d 1056, 1061 (8th Cir.

1995); United States v. Hyde, 448 F.2d 815, 846 (5th Cir. 1971); and (6) telephone messages and

notes, United States v. Kingston, 971 F.2d 481, 486 (10th Cir. 1992); Kassel, 875 F.2d at 945;

United States v. Norton, 867 F.2d 1354, 1363 (11th Cir. 1989).  The United States will seek to

introduce similar records here.

### (vii)   Hearsay Exception -- Public Records

The United States also may offer in evidence certain documents, such as deeds,

resolutions, ordinances, tax returns, public meeting agendas and recordings of public hearings

and legislative sessions, pursuant to the public records exception to the hearsay rule.  Rule

803(8) of the Federal Rules of Evidence provides:

> Records, reports, statements, or data compilations, in any form, of public
> offices or agencies setting forth (A) the activities of the office or agency,
> or (B) matters observed pursuant to duty imposed by law as to which
> matters there was a duty to report, excluding, however, in criminal cases
> matters observed by police officers and other law enforcement personnel. .

19

> . . unless the sources of information or other circumstances indicate lack
> of trustworthiness[,]

are admissible.  This rule is rooted in the assumptions that a public official will perform his

public duty properly and that it would be unlikely that such official would remember the details

independently of the record.  See Reynolds v. Green, 184 F.3d 589, 596 (6th Cir. 1999); United

States v. Loera, 923 F.2d 725, 730 (9th Cir. 1991).  "Because records prepared by public

officials are presumed to be trustworthy, the burden is on the party opposing admission to show

that a report is inadmissible because its sources of information or other circumstances indicated a

lack of trustworthiness." Green, 184 F.3d at 596 (internal quotation marks and citation omitted).

Courts have permitted the admission of various forms of public records under this rule.  See

Alexander v. Estepp, 95 F.3d 312, 314 n.2 (4th Cir. 1996) (documents setting forth the activities

of a fire department); Loera, 923 F.2d at 730 (court docket and disposition records setting forth

the official actions of the court); Karlin v. Foust, 975 F. Supp. 1177, 1211 (W.D. Wis. 1997)

(summaries of public hearings and executive sessions of legislature), aff'd in part, rev'd in part,

188 F.3d 446 (7th Cir. 1999); Major v. Treen, 574 F. Supp. 325, 330 n.6 (D. La. 1983)

(transcripts of legislative hearings).


## IV.   SUMMARY AND DEMONSTRATIVE CHARTS

The United States anticipates seeking the admission of certain summary and

demonstrative charts to aid the jury in reviewing the voluminous evidence relating to several

counts charged in the Indictment.  The admission of summary charts and demonstrative charts is

proper, pursuant to Fed. R. Evid. 611(a) and 1006, in light of the vast amounts of evidence that

the Government will introduce during the trial and the convenience and clarity of presenting the

contents in chart form.

Rule 1006 of the Federal Rules of Evidence governs the admission of summaries.  Rule

1006 provides, in pertinent part:

> The contents of voluminous writings . . . which cannot
> conveniently be examined in court may be presented in the form of
> a chart, summary, or calculation.  The originals or duplicates shall
> be made available for examination or copying, or both, by other
> parties at reasonable time and place.  The court may order that they
> be produced in court.

Fed. R. Evid. 1006.  The clear language of the rule suggests that summaries of evidence, whether

or not the underlying evidence is  produced in court, are admissible, particularly when the

summaries are a practical way to place information in an intelligent form.  See, e.g., Hackett v.

Housing Authority of San Antonio, 750 F.2d 1308, 1312 (5th Cir. 1985); Soden v. Freightliner

Corp. 714 F.2d 498, 506 (5th Cir. 1983); United States v. Clements, 588 F.2d 1030, 1039 (5th

Cir. 1979); see also United States v. Campbell, 845 F.2d 1374, 1381 (6th Cir. 1988).

Summary charts are admissible if (1) they are based upon witness testimony or

documents that are actually admitted into evidence or otherwise admissible, (2) the underlying

evidence is available to the other side for inspection, and (3) the person who prepared the charts

is available for cross-examination.  See, e.g., Pelullo, 964 F.2d at 204-06; United States v.

Johnson, 594 F.2d 1253, 1254-57 (9th Cir. 1979); United States v. Denton, 556 F.2d 811, 816

(6th Cir. 1977); United States v. Strauss, 473 F.2d 1262, 1263 (3d Cir. 1973); United States v.

Moody, 339 F.2d 161, 162 (6th Cir. 1964).  There is no requirement that the court find it to be

"literally impossible to examine the underlying records before a summary chart may be utilized."

21

<u>United States v. Scales</u>, 594 F.2d 558, 562 (6th Cir. 1979).  The court need only find that in-court examination would not be convenient.

The charts here will aid the jury in understanding the land fraud and tax fraud counts charged in the Indictment, in that the charts will basically summarize numerous checks, deposit slips, and other documents from multiple bank accounts, which were obtained from banks and other financial companies, as well as other documents which were seized or retrieved from the defendants or City of Newark.  The United States will seek to have the underlying exhibits and supporting charts admitted into evidence in accordance with the Federal Rules.  The underlying evidence itself has been provided to counsel and has been available to counsel for review for many months.  Further, the individuals who reviewed the charts will be available for cross-examination.  Importantly, these charts will be crucial to the jury's understanding of the breadth and nature of the defendants' land fraud offenses, and defendant Riley's tax fraud offenses, as more fully described in the Indictment.  Indeed, these charts will help the jury organize the voluminous documentary evidence in this multi-transaction case and therefore are properly admissible.

## V.      JENCKS PRODUCTION APPLIES TO SUBJECT MATTER OF TESTIMONY ONLY

The Jencks Act, 18 U.S.C. § 3500, requires the parties to produce prior statements of witnesses that relate to the subject matter of the witnesses' testimony.  Because this case has been severed, the Government is obligated to produce only those portions of witness statements pertaining to the crimes addressed at trial and not regarding the severed counts.  <u>See</u> 18 U.S.C. § 3500 (requiring Government to produce prior statements of witnesses concerning subject matter

of their testimony).  The proper procedure under the Jencks Act, applicable to prior statements of

witnesses who testified before the grand jury or spoke with law enforcement about both the

severed and unsevered counts is for the Government to provide the Court with proposed redacted

versions of the materials.  The pertinent portion of the Jencks Act provides:

> If the United States claims that any statement ordered to be produced under this
> section contains matter which does not relate to the subject matter of the
> testimony of the witness, the court shall order the United States to deliver such
> statement for the inspection of the court in camera.  Upon such delivery the court
> shall excise the portions of such statement which do not relate to the subject
> matter of the testimony of the witness.  With such material excised, the court shall
> then direct delivery of such statement to the defendant for his use.

18 U.S.C. § 3500(c).  See also U.S. v. Scolnick, 392 F.2d 320 (3d Cir. 1968) (holding defendant

not entitled to review full statements and in camera review of Jencks materials proper).  In

Scolnick, the Third Circuit stated:

> Before a defendant is entitled to the delivery of a statement under the so-called
> Jencks Act, 18 U.S.C. § 3500, the Government witness must have testified and
> the statement must relate to the subject matter of the testimony. This is true even
> though the statements may relate to the subject matter of the indictment. See
> United States v. Butenko, 384 F.2d 554 (3rd Cir., Oct. 6, 1967). The ruling as to
> whether the requested statement relates to the testimony given by the witness is
> left to the determination of the trial judge after an "inspection of the court in
> camera." 18 U.S.C. § 3500(c). This was the exact and proper procedure followed
> by the district court here. Acceptance of defendant's argument [that he should
> have inspected all the statements] would nullify the procedure adopted in the
> Jencks Act to meet conflicting policy factors.

Id. at 327.

Accordingly, for those witnesses who testified about the credit card scheme as well as the

other charged counts, the Government will provide the Court, in camera, with proposed

redactions of those statements and ask the Court for a ruling regarding the redacted versions that

the Government will provide to defense.

23

VI.     **PRIOR CONSISTENT STATEMENTS**

The United States, if necessary, may offer prior consistent statements of a witness to rebut a claim of recent fabrication or improper influence or motive.  According to Rule 801(d)(1)(B), "[a] statement is not hearsay if--[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . [c]onsistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. . . ."  See Tome v. United States, 513 U.S. 150, 698 (1995); United States v. Provenzano, 620 F.2d 985, 1001 (3d Cir. 1980).

Four requirements must be met in order for prior consistent statements to be admitted under this Rule: (1) the declarant must testify at the trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.  United States v. Frazier, 469 F.3d 85, 88 (3d Cir. 2006) (citing Tome, 513 U.S. at 150), cert. denied, 127 S. Ct. 1925 (2007).  The Government may offer these prior consistent statements not only for witness rehabilitation, but also as substantive evidence of the events that these statements describe. United States v. Casoni, 950 F.2d 893, 905 (3d Cir. 1991).  Nothing in the Rule requires that the prior consistent statement contradict any testimony given on cross-examination; the prior statement must merely be offered to rebut a charge or implied charge of fabrication,  United States v. Young, 105 F.3d 1, 9 (1st Cir. 1997), or improper motive, such as testimony in exchange for leniency, see United States v. Montague, 958 F.2d 1094, 1096 (D.C. Cir. 1992).  In

24

determining whether the defense is alleging that the witness recently concocted a story, the Court

may refer to the defendants' opening arguments, as well as the defense presented at trial.  <u>See</u>

<u>United States v. Reed</u>, 887 F.2d 1398, 1406 (11th Cir. 1989).  In these instances, the subjective

intent of the cross-examiner is not relevant, and if the questioning objectively could permit the

jury to infer a claim of fabrication, then the prior consistent statement is admissible under Rule

801(d)(1)(B); <u>Young</u>, 105 F.3d at 8-9.  There need only be a suggestion that the witness

<u>consciously</u> <u>altered</u> his testimony in order to permit the use of the prior consistent statements.

<u>Frazier</u>, 469 F.3d at 88.  In determining whether there has been a suggestion of conscious

alteration by the opposing party, the trial judge must "make an objective determination based on

its examination of the entire trial record to determine whether impeaching counsel's trial tactics

could reasonably be taken by the jury as implying recent fabrication or improper inference or

motive."  <u>Id.</u> at 89.

　　　　The United States may seek to offer such prior consistent statements should the situation

develop.


## VII.　　HOSTILE OR ADVERSE WITNESSES AND LEADING QUESTIONS

　　　　It may be that the United States will call a witness who will be hostile or identified with

an adverse party.  Rule 611(c) of the Federal Rules of Evidence provides that when a party "calls

a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation

may be by leading questions."  A witness need not be contemptuous or surly to be hostile--all

that the witness need be is evasive or adverse to the Government, <u>see</u> <u>United States v. Brown</u>,

603 F.2d 1022, 1026 (1st Cir. 1979), or identified with an adverse party, <u>see</u> <u>United States v.</u>

25

<u>Hicks</u>, 748 F.2d 854, 859 (4th Cir. 1984).  Another district court in this circuit summarized the

rationale:

> A witness should not have words put in his mouth.  But neither should an
> attorney, confronted with an obviously recalcitrant witness, be confined to
> neutral questions. . . .   Leading questions are prohibited in order to
> prevent a partisan witness from accepting suggestions from a friendly
> attorney. . . .  When the witness is hostile leading questions are as
> permissible as if the witness had been called by the other side.

<u>United States v. Barrow</u>, 229 F. Supp. 722, 728 (E.D. Pa. 1964) (citations omitted), <u>aff'd</u> <u>in</u> <u>part</u>,

<u>rev'd</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u>, 363 F.2d 62 (3d Cir. 1966).  Where this situation occurs, it is

appropriate for the United States to interrogate by leading questions.

The Court also has the discretion under the rule to limit the use of leading questions by

the defense when the United States calls a witness closely identified with the defendant.  Under

federal law, no one has an absolute right to ask leading questions on cross-examination.  <u>Oberlin</u>

<u>v. Marlin American Corp.</u>, 596 F.2d 1322, 1328 (7th Cir. 1979).  In this regard, the Rule reads in

relevant part that "<u>[o]rdinarily</u> leading questions should be permitted on cross-examination."

Fed. R. Evid. 611(c) (emphasis added).  The Advisory Committee Notes explained the reason for

the use of the qualifier, "ordinarily," stating:  "[t]he purpose of the qualification 'ordinarily' is to

furnish a basis for denying the use of leading questions when the cross-examination is cross-

examination in form only and not in fact, as for example the 'cross-examination' of a party by

his own counsel after being called by the opponent (savoring more of re-direct) or of an insured

defendant who proves to be friendly to the plaintiff."  Hence, the Court also may limit leading

questions by the defense on cross-examination where the Government witness is closely

identified with either of the defendants.

26

## VIII.   <u>USE OF HYPOTHETICAL QUESTIONS</u>

The Government may from time-to-time examine certain of its witnesses through hypothetical questions.  Courts permit this form of questioning in mail/wire fraud prosecutions in general, and honest-services fraud prosecutions in particular.  For instance, in <u>United States v. Bush</u>, 522 F.2d 641 (7th Cir. 1975), the Seventh Circuit approved this form of questioning during the honest-services prosecution of a Chicago public official for failing to disclose his material personal financial interest in a matter over which he had authority -- specifically steering lucrative City of Chicago government contracts to a vendor in whom he had an indirect financial interest.  <u>Id.</u> at 643-46.  The grand jury charged Bush with mail fraud for depriving the City of Chicago of his honest services.  At trial, to prove the materiality of Bush's intentional nondisclosure, the Government asked certain Chicago government officials whether they would have acted differently had they known of Bush's personal financial interest in the vendor.  <u>Id.</u> at 649.  The Seventh Circuit approved the hypothetical questioning under these circumstances, stating that  "normally such questions are improper <u>unless</u> they are used to show that a defendant's active misrepresentations or active concealment were materially relied upon by a victim of the fraud."  <u>Id.</u> at 650 (emphasis added).  <u>See</u> <u>United States v. Ranney</u>, 719 F.2d 1183, 1187-89 (1st Cir. 1983) (approving use of hypothetical questions in mail fraud prosecution); <u>United States v. Isaacs</u>, 493 F.2d 1124, 1162 (7th Cir. 1974) ("what if" questions were proper in honest-services/corruption prosecution of Illinois governor) (citing, e.g., <u>United States v. Aleli</u>, 170 F.2d 18, 20 (3d Cir. 1948)).  <u>See</u> <u>also</u> <u>United States v. Genova</u>, 167 F. Supp. 2d 1021, 1030 (N.D. Ill. 2001) (in honest-services prosecution of mayor for taking kickbacks, city council members testify that mayor's ongoing business relationship with vendor "would have been

relevant and material" to their decision to employ vendor).  The Seventh Circuit particularly

approved the practice under the circumstances of an honest-services case because of the

conciseness of the prosecutor's inquiry and the fact that there was no need for extensive or

complicated supplemental evidence to inform the hypothetical question put to the witnesses.

Bush, 522 F.2d at 650-51.  The Government will likely conduct similar questioning here to prove

the materiality of certain representations and nondisclosures.


## IX.   USE OF PRIOR TESTIMONY AS SUBSTANTIVE EVIDENCE

Situations may arise during the trial where the United States will seek to offer a witness's

prior testimony as substantive evidence where that prior testimony is inconsistent with the

witness's testimony at trial.  Federal Rule of Evidence 801(d)(1)(A) provides in pertinent part:

> [a] statement is not hearsay if . . . [t]he declarant testifies at the trial or
> hearing and is subject to cross-examination concerning the statement, and
> the statement is . . . . inconsistent with the declarant's testimony, and was
> given under oath subject to the penalty of perjury at a trial, hearing, or
> other proceeding. . . .

Because such prior inconsistent statements are defined as not being hearsay, they may be

admitted as substantive evidence for the truth of the matter asserted and not just for impeachment

purposes.  See United States v. Odom, 13 F.3d 949, 954-55 (6th Cir. 1994); United States v.

DiCaro, 772 F.2d 1314, 1312 (7th Cir. 1985); United States v. Hemmer, 729 F.2d 10, 17 (1st Cir.

1984); United States v. Morgan, 555 F.2d 238, 242 (9th Cir. 1977).  Thus, Rule 801(d)(1)(A)

permits the admission of prior inconsistent statements of a witness as substantive evidence if (1)

28

those prior statements were given under oath; (2) the declarant testifies at trial; (3) the declarant is subject to cross-examination,[2] and (4) the statements were inconsistent as defined, infra.

In this case, the prior statements that the United States may seek to offer under this rule are those of individuals who will testify at trial and who will be subject to cross-examination about the statement. Thus, the Government has met the first two requirements.

The statements that the United States may seek to introduce will be, for the most part, the witness's sworn testimony before a federal grand jury. Grand jury testimony[3] qualifies as a statement given under oath and, therefore, satisfies the "under oath" requirement of the Rule. See, e.g., Jacoby, 955 F.2d at 1539; United States v. Washita Construction, Co., 789 F.2d 809, 816 n. 10 (10th Cir. 1986); United States v. Stockton, 788 F.2d 210, 219 n.14 (4th Cir. 1986); DiCaro, 772 F.2d at 1322; United States v. Williams, 737 F.2d 594, 608 (7th Cir. 1984); United States v. Russell, 712 F.2d 1256, 1258 (8th Cir. 1983); United States v. Distler, 671 F.2d 954, 959 (6th Cir. 1981); United States v. Dennis, 625 F.2d 782, 795 (8th Cir. 1980). In certain circumstances, sworn and recorded statements to law enforcement authorities also qualify as

---

[2]     In California v. Green, 399 U.S. 149 (1970), the Supreme Court held that the admission of prior inconsistent statements as substantive evidence does not violate the Confrontation Clause if the declarant is subject to cross-examination.

[3]     Transcripts of grand jury testimony are self-authenticating since they possess a "certificate of acknowledgment." Rule 902(8) of the Federal Rules of Evidence provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [d]ocuments accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments." Congress has recognized that the certificates by court reporters make certain matters, such as trial-court transcripts, self-authenticating and hence reflect that they are "prima facie a correct statement of the testimony taken and the proceedings had." 28 U.S.C. § 753(b). For the same reasons, grand jury transcripts bearing the reporter's certificate should be deemed self-authenticating, and, therefore, prima facie correct statements of the testimony taken.

sworn statements under this rule.  United States v. Castro-Ayon, 537 F.2d 1055, 1057-58 (9th

Cir. 1976).

The prior sworn statement also must be inconsistent with the trial testimony.  See Distler,

671 F.2d at 958; United States v. Woods, 613 F.2d 629, 637 (6th Cir. 1980; United States v.

Mosely, 555 F.2d 191, 193 (8th Cir. 1977); Castro-Ayon, 537 F.2d at 1057.  As the Eighth

Circuit explained:

> The trial judge has considerable discretion in determining whether
> testimony is "inconsistent" with prior statements; inconsistency is
> not limited to diametrically opposed answers but may be found in
> evasive answers, inability to recall, silence, or changes in position.

Dennis, 625 F.2d at 795 (cited with approval in United States v. Wali, 860 F.2d 588, 591 (3d Cir.

1988)) (emphasis added); see also United States v. Rogers, 549 F.2d 490 (8th Cir. 1976) (a

"statement's inconsistency may be determined from the circumstances and is not limited to cases

in which diametrically opposite assertions have been made.  Thus, inconsistencies may be found

in changes in position; they may be implied through silence; and they may also be found in

denial of recollection.").  Similarly, the Seventh Circuit stated:

> we do not read the word "inconsistent" in Rule 801(d)(1)(A) to
> include only statements diametrically opposed or logically
> incompatible.  Rather, we joined a number of other circuits in
> concluding that particularly in a case of manifest reluctance to
> testify . . . if a witness has testified to certain facts in the grand jury
> and forgets . . . them at trial, his grand jury testimony falls squarely
> within Rule 801(d)(1)(A).

Williams, 737 F.2d at 608 (emphasis added) (citations and quotation marks omitted).

The trial judge has broad discretion to determine if an evasive answer is inconsistent with

the statements made in another proceeding.  This is so because the policy behind Rule

801(d)(1)(A) is to "provide a party with desirable protection against the turncoat witness who

30

changes his story on the stand and deprives the party calling him of evidence essential to his case." United States v. Bigham, 812 F.2d 943 (5th Cir. 1987) (permitting the admission of grand jury testimony of a witness who feigned a memory loss); United States v. Murphy, 696 F.2d 282, 284 (4th Cir. 1982) (permitting admission of grand jury testimony of a witness who stated that he could not recall and was vague about what he stated to the grand jury except that he lied to the grand jury). Thus, a partial or vague recollection is deemed to be inconsistent with total or definite recollection. Distler, 671 F.2d at 958; see also Williams, 737 F.2d at 608 (permitting admission of grand jury testimony where the witness claimed a partial memory loss in his testimony at trial); United States v. Marchand, 564 F.2d 983, 999 (2d Cir. 1977) (permitting the admission of grand jury testimony where the witness testified to facts before the grand jury and forgets or denies them at trial); Rogers, 549 F.2d at 495-96. Further, as the Court noted in Argnellino v. New Jersey, 493 F.2d 714, 730 (3d Cir. 1974), "[a] complete answer to a question may be as inconsistent with a partial reply as one completely different in detail." If the prior statement indicates that at an earlier time the witness remembered the events about which he testified with more certainty or in more detail, then it is permissible to admit the prior statement of the witness who recalled the event incompletely or with some equivocation. Distler, 671 F.2d at 958.

In sum then, a claimed inability to recall, when disbelieved by the trial judge, or a failure to testify about details previously provided, may be viewed as inconsistent with previous statements when the witness does not deny that the previous statements were made. See United States v. Palumbo, 639 F.2d 123, 128 n.6 (3d Cir. 1981); Rogers, 549 F.2d at 496. All such statements are admissible under Rule 801(d)(1)(A).

31

**X.     THE COURT SHOULD PROPERLY LIMIT THE DEFENDANTS'**
**INTRODUCTION OF CHARACTER OR REPUTATION EVIDENCE**

The defendants may seek to introduce evidence of their reputation or character during the

trial.  The Government respectfully requests that the Court admonish the defendants as to the

proper bounds for admitting such evidence.

Rule 405(a) of the Federal Rules of Evidence provides three different methods of proving

character: (1) by testimony as to reputation; (2) by testimony in the form of opinion; and (3) by

inquiry into specific instances of conduct. The evidence must also be pertinent to a trait at issue

in the case. Set forth below are the standards governing the admissibility of character evidence

on direct and cross-examination.

**A.     Direct Examination**

Any defendant may "open[] the door to a discussion of his character by calling character

witnesses under Rule 404(a)(1)."  2 Weinstein & Berger, Weinstein's Evidence, ¶ 405[02] at

405-22 (1986).  Such witnesses may testify as to a defendant's reputation in the community or

may provide opinion testimony.  Character witnesses on direct examination, however, are

precluded from testifying "about defendant's specific acts or courses of conduct."  Michelson v.

United States, 335 U.S. 469, 477 (1948); Notes of Advisory Committee on Proposed Rules to

Fed. R. Evid. 405; 2 Weinstein's Evidence at 405-22.  In other words, an opinion witness

testifying to character on direct examination may give a general description of his acquaintance

with the defendant (e.g., "we do business together"), but the witness must be barred from

testifying further about specific conduct (e.g., "he has borrowed money and repaid it").

With regard to reputation testimony, the witness must demonstrate that he is familiar with

defendant's reputation in the community, that he is a member of the relevant community, and that

32

he speaks for it.  See United States v. Perry, 643 F.2d 38, 52 (2d Cir. 1981) (private investigator

could not testify to the defendant's reputation as gathered by interviews with his neighbors); 2

Weinstein's Evidence at 405-18.  Such testimony also must be limited to a time

"contemporaneous with the acts charged."  United States v. Curtis, 644 F.2d 263, 268 (3d Cir.

1981).

Any character evidence the defendant intends to introduce must be "pertinent," meaning

relevant to issues germane to the case. Otherwise it is inadmissible. See, e.g. United States v.

Sanchez-Gonzalez, 294 F.3d 563, 567 (3d Cir.2002) (upholding the district court's exclusion of

evidence of impoverishment as irrelevant under Federal Rules of Evidence 401, 402, and 403).

## B. **Cross-Examination**

When a defendant introduces character testimony he opens the door to cross-examination

of his witnesses.  Rule 405(a) expressly allows the Government to cross-examine character

witnesses regarding their knowledge of specific instances of the defendant's conduct."  United

States v. Kellogg, 510 F.3d 188, 192 (3d Cir. 2007).  Such cross-examination may assist the jury

in evaluating the reliability of character testimony.  Id.

### (i) **Reputation**

Where there is direct testimony addressed to community reputation, the United States is

permitted to and intends to inquire "about conduct, and even about charges, which may have

come to the attention of the relevant community."  Curtis, 644 F.2d at 268.  These inquiries will

be limited to "matters reasonably proximate to the time of the alleged offense."  Id. at 269.  As

discussed in the Notes of the Advisory Committee, the United States may properly inquire "as to

whether the reputation witness has heard of particular instances of conduct" which meet the
above relevance standards.

**(ii)** **Opinion**

Where a defendant offers opinion testimony, the United States is permitted to and intends
to inquire about matters "which bear on the fact or factual basis for formation of opinion."
Curtis, 644 F.2d at 268.  Accordingly, the scope of cross-examination is broader than with
reputation testimony.  Not only can a witness' testimonial qualifications be challenged (e.g.,
knowledge and observations of the defendant), but his or her opinion itself may also be probed
(e.g., would the witness' opinion change dif he or she were aware of relevant specific instances
of conduct).  Id. at 268-69.  The United States is thus not limited to specific instances likely to be
known to the relevant community.  Indeed, an opinion witness can be asked "whether he knew as
well as whether he heard."  Notes of Advisory Committee on Proposed Rules to Fed. R. Evid.
405.  In connection with such opinion testimony, the witness can be cross-examined on how
additional facts would affect that opinion.  The examination may include questions about the
charged crime to test the witness's bias and own standards by asking "whether the witness would
obtain a favorable opinion of the defendant even if the evidence at trial proved guilt."  Kellogg,
510 F.3d at 196.

## XI.  GOOD-FAITH BASIS FOR QUESTIONS

The scope and extent of cross-examination lies within the discretion of the trial judge.
The trial court may, in its discretion, preclude questions for which the questioner cannot show a
good faith basis.  United States v. Adames, 56 F.3d 737, 745 (7th Cir. 1995); United States v.

34

Concepcion, 983 F.2d 369, 391 (2d Cir. 1992).  See also United States v. Millan-Colon, 836 F.

Supp. 1022, 1024 (S.D.N.Y. 1993) ("pure speculation" and "hypothesis" are not a substitute for

a good faith basis).

     For example, in United States v. Katsougrakis, 715 F.2d 769, 777-78 (2d Cir. 1983),

defense counsel asked a witness whether he had mentioned to the federal agent who had

interviewed him that certain individuals had reputations as "hit men."  The Government objected

and the trial court sustained the objection, after defense counsel was unable to show a good faith

basis for the line of questioning.  The appellate court held that the trial court's ruling was proper,

stating: "[a]lthough counsel may explore certain areas of inquiry in a criminal trial without full

knowledge of the answer to anticipated questions, he must, when confronted with a demand for

an offer of proof, provide some good faith basis for questioning that alleges adverse facts."  Id. at

779.  Similar good faith bases are necessary in this case.

**<u>CONCLUSION</u>**

For the reasons articulated above, the Court should admit the evidence referenced in this memorandum and should permit the Government to prove and defend its case consistent with the law articulated in this memorandum.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney

By: <u>/s/ Judith H. Germano</u>
JUDITH H. GERMANO
Assistant U.S. Attorney
PHILLIP H. KWON
Assistant U.S. Attorney
PERRY PRIMAVERA
Special Assistant U.S. Attorney

DATED:  February 19, 2008
Newark, New Jersey

36